Good morning, Your Honors. Andrew Knapp, representing Petitioner Balmore Hernandez, pro bono. Thank you. Your Honors, I'm not sure why I was given a full 15 minutes of fame to argue this case, nor that I'll need to use that much of this court's time. This is because the problem, as I see it, is that the BIA, rather than saying that it would not grant my client's motion to reopen, instead said that it couldn't. Now, if the BIA had instead said that it didn't feel bound by paragraph 19 of the ABC Settlement Agreement to honor my client's election for administrative closure because his appeal was late, then there's no question that this court could step in and review de novo that jurisdiction, that is, the adjudicative capacity to even consider anything other than the timeliness of my client's appeal. Well, I have a similar concern of what you're articulating, because if everyone says, well, we can't hear it, we can't hear it, well, where are you supposed to go? And now it's clear that, well, it seems I'm not really sure. I would be curious what the government's best argument is on this. I don't have a problem if you wanted to save your time and to weigh what it is and respond to it, but I can't speak for my other panel members. I agree that that would be a good idea. Why don't you reserve your time and let's see if we can understand what the government's position is. Good morning, Your Honors. May it please the Court. Edith Yacone on behalf of the Respondent Attorney General. I'd like to address your question, and just to make sure I understand the question. Are you responding to the fact that Petitioner filed a motion with the immigration judge following the dismissal of his initial appeal, which was rejected? Well, I think that there's a lot of issues. I don't understand your reading of Paragraph 19. Apparently, he is in the group. That's not disputed, right? That's correct. Okay. It appears to be the case based on the record. Okay. But I don't understand your reading of Paragraph 19, which the ABC agreement is allowing the BIA to refuse to decide a request for administrative closure be squared with Paragraph 19's plain text, which says, an ABC class member may ask the immigration court or the BIA to administratively close his or her case. Doesn't your reading read or the BIA out of the existence of the rules of contract interpretation in this Court's decision in Chalet-Garcia v. U.S.? I'd like to take this opportunity to clarify the context of Paragraph 19 in the settlement agreement. And the argument I'll make, and I'll explain why this is the case afterwards, is that the settlement agreement in ABC doesn't contemplate their request for administrative closure will be made in a case like this after a final order of removal is entered in the case. So the settlement agreement in ABC was entered in 1991. It stipulated that the former INS would provide de novo asylum adjudications to certain Salvadorans and Guatemalans who take advantage of their rights under the agreement. Paragraph 19 of the agreement provided that EOIR, the Executive Office for Immigration Review, in cases where it has proceedings involving class members which are pending, in 1990, November 30th, would automatically stay or administratively close those proceedings. So if Mr. Hernandez had been in proceedings in early 1990, EOIR would have then automatically administratively closed proceedings. Now, Paragraph 19 goes on to state that in cases postdating November 30th, 1990, such as Mr. Hernandez's case, if the alien requests administrative closure, then the alien's case will be administratively closed in order to allow the alien to pursue the remedy of a de novo asylum adjudication before DHS or former INS. Now, the ABC settlement contemplates that these requests will be made in the course of proceedings, and that's why Paragraph 21 of the agreement indicates that nothing in the agreement shall be construed to afford a right to further proceedings for those class members with a final order of deportation. In this particular case, Mr. Hernandez did not request administrative closure in the course of his proceedings, and his appeal became — I'm sorry, the immigration judge's decision became final at the time the appeal right became — once his time to appeal had expired, excuse me. So in this case, because he didn't request administrative closure during removal proceedings, because he didn't request administrative closure on appeal to the board, he didn't request it in the time period indicated in the ABC settlement agreement. Instead — It seems like, though, that your argument's a little bit of a moving target. I mean, prior to — it seemed that after Hernandez v. Holder, before that, you said that the place of filing rule was a problem. Do you concede now that that's not a problem? It's not a problem, and I'll explain why. Mr. Hernandez, in his opening brief — But you did contest that previously, right? We filed a motion to hold the case in abeyance in March of 2013 to determine whether Sanchez v. Cabeza, a case which also addressed the board's place of filing rule, would have any effect on this case. Now, Petitioner opposed our motion. Afterwards, Petitioner, in opposing our motion, indicated that there was, in fact, no motion to reopen filed in this case, and the government agrees, because Petitioner did not file a motion pursuant to statute or regulation. Instead, he filed merely an election. There's a distinction between an election under paragraph 19 of the settlement agreement in ABC and a motion pursuant to statute or regulations. There are certain requirements for motions to reopen or motions to reconsider pursuant to statute or regulations. For example, a motion to reopen must be filed within a certain time period. It must demonstrate prima facie eligibility — So all his problems are procedural? I mean, that he would otherwise qualify? His problems are procedural, but it's important to make one thing clear. His eligibility to seek a de novo adjudication of his asylum claim before USCIS, before the Department of Homeland Security, is not prejudiced here. He's had several interviews set up for 2012, 2014, and his attorneys requested that those asylum adjudications be delayed. Those interviews have been rescheduled at his request, but yet the opportunity to have this de novo adjudication remains available to the Petitioner, and that's not prejudiced by the fact that this case has been closed. If the court denies the petition for review, he still will be eligible for the de novo adjudication before USCIS, and that's part of the ABC settlement agreement. But it sort of seems like when he was before the BIA, they said that he had to go to the immigration court, but now it appears that he could have gone before the BIA, but now you're saying he didn't do it in time, so at every turn, there's always, yeah, at some points, that your arguments keep moving for another reason why he can't get administrative closure. Had he filed a motion to reopen with the Board, post-Hernandez, the response would be clear that the Board does have jurisdiction to consider that motion and has to address it on the merits whatever it decides. But in this case, a motion to reopen was not filed with the Board, and just because the government moved to hold the case in abeyance pending Sanchez de Cabeza in light of the arguments in Petitioner's brief, it doesn't mean that the government's position was that this was a motion to reopen, but instead, it was that Petitioner argued that this was a motion to reopen, the government was willing to hold the case in abeyance to see if Sanchez de Cabeza would influence the outcome of this case, and when Petitioner opposed, the government agreed that this was simply an election under the ABC settlement agreement. And the Board was not subject to the same rules it's subject to when responding to a motion pursuant to statute or regulation, and instead had to respond to a request pursuant to a settlement agreement. All right. So I guess now what you're saying is he can try to go for asylum, but he risks losing that, right? But if, but you're saying if he had filed in a timely fashion in the right place, he would have been entitled to administrative closure, for sure? Let's assume that's correct, but I'd like to make a point to put that in context. The purpose of administrative closure is not an end in and of itself. It's a means to an end. The idea is that administrative closure would be available to class members in ABC to permit them to first take their request to USCIS. And once USCIS makes the determination, then the case could be brought back to immigration court. It doesn't mean the case would be forever and for always administratively closed. Why do we have to worry about all of that? If he wants to have you administratively close it and you're supposed to administratively close it, why don't you just do it and then say whatever the consequences are, they are? Can you repeat the question, Your Honor? Why can't he just administratively close it? Why? Why don't we, why don't you just administratively close it? You're saying it won't do him any good or it will do him some good or whatever, but under paragraph 19, let's assume you're If he had filed a little while ago, is what I understand from what Judge Callahan's questioned, if he had filed in a timely manner, he would have just done it, right? Had he filed in a timely manner, had he requested administrative closure during the course of proceedings, he probably would have been granted administrative closure. But the idea When did he first ask for administrative closure? Once this case was sent back to the Board of Immigration Appeals for reconsideration of the untimely appeal of the IJ's decision in light of Irigoyen-Breonis, which held that the 30-day time to appeal an immigration judge's decision is a non-jurisdictional claims processing rule. But then didn't he try in front of the BIA and they said we don't have jurisdiction then? He filed a motion with the immigration judge and that motion was filed earlier after the Board of Immigration Appeals. So he filed things, but then everyone kept telling him he was in the wrong place, right? Or we don't have jurisdiction. The immigration judge denied the motion indicating that the BIA still had the case. Right. That was incorrect. So then he goes to the BIA and then the BIA says we don't have jurisdiction. The immigration judge denied the motion approximately one month after the Board dismissed the appeal and it appears as though the immigration judge was not aware of the dismissal of the appeal. So the correct course of action now would be to file a motion with the immigration judge should Mr. Hernandez wish to do so. Now, again, the purpose of the administrative closure is to allow the alien to pursue their claim for de novo solemn adjudication with USCIS. In this case, Mr. Hernandez can continue to do so. The fact that he didn't timely request administrative closure during the course of proceedings as contemplated. But now what I'm sort of hearing, he did timely do it, he just did it in the wrong spot. He did not timely request administrative closure. There's a timely request would have come in the course of proceedings. In this case, the Board simply concluded that his appeal was untimely, it was not going to take the case up on certification and indicated that any additional claims should be submitted to the immigration judge. Well, my understanding is the first time the immigration judge said there's without any what didn't seem without any real evidence said, well, you didn't show any proof that you're even entitled to this relief. And no one was disputing that he was. So I mean, I don't usually, I mean, you know, sympathy is not how I lead, but it just seems that every turn, whatever this poor guy does, someone tells him you're in the wrong place, it's the wrong time, or whatever. The immigration judge adjudicated the requests on the merit, denied asylum, and denied NACARA relief. So his requests for relief were adjudicated on the merits before the immigration judge. And the immigration... Didn't the immigration judge suddenly, just for no reason, say there's no proof that you're even a member of the class? The immigration judge indicated... And everyone agreed that he was. The immigration judge indicated that the petitioner was not credible and concluded that the credibility was in doubt in this case, but then proceeded to address the claims on the merits and concluded that the alien had failed to demonstrate past persecution or a well-founded fear of future persecution, and also denied the request for NACARA as a matter of discretion in light of the several convictions that the petitioner had. So the adverse credibility determination did not bleed into the immigration judge's determinations on the merits of the applications. The immigration judge didn't believe the petitioner and said, I'm not sure when you arrived in the country. You provided no evidence regarding your date of entry. I don't know... But it didn't appear that in the hearing, that it appeared that the government and whoever was representing him, that there was no dispute that he was a member of the class. And then the immigration judge, on his or her own, decided he wasn't. The immigration judge actually did not decide that he was not a member of the class. In fact, if the immigration judge were to decide that he is not a member of the class, he would have pre-terminated the application for NACARA relief. So the NACARA relief adjudication on the merits indicates that the immigration judge, notwithstanding the adverse credibility determination, still said, let's assume you are a class member. I still am going to deny your application as a matter of discretion in light of your criminal history. And so it's true that the immigration judge questioned the bona fides of his membership in the ABC class. And does he have discretion to do that, to deny that? Sure. The immigration judge can provide alternate bases for his determination and did so in this case. Paragraph 19 says, the individual may ask the court to administratively close this case. And the case will be closed unless the class member has been convicted of an aggravated felony or is subjected to paragraph 17. It doesn't say in the discretion of the immigration judge. It says it will be closed unless he's been convicted of an aggravated felony. Your Honor, let's be clear. We're discussing two separate issues. First issue is the issue of administrative closure. And you're right. If the alien had requested administrative closure, paragraph 19 speaks in mandatory language. The immigration judge would have had to administratively close proceedings. There was no such request in this case. Instead, the alien requested relief in the form of asylum, withholding of removal, protection under CAT, and NACARA relief, not administrative closure to pursue his applications with USCIS. Isn't NACARA relief what's covered by paragraph 19? No. And that's another issue which has been a point in this case. Because the ABC settlement agreement is a settlement agreement that was reached in the early 1990s. And NACARA didn't arise until 1996-97 when Congress decided that it wanted to shield which came as a consequence of the Illegal Immigration Reform and Immigrant Responsibility Act. Okay. So that I correctly understand your argument here. It would seem you say that Hernandez waived his request for administrative closure when he requested administrative closure before the BIA and expressly invoked the ABC agreement as obligating the BIA to administratively close this case. Did you take that position that he waived it? I'm not sure that the government took that position. It's certainly not the position in the brief. The point that I'm making today is that the settlement agreement contemplates that those requests will be made in the course of proceedings. And it's a matter of fact that he did not request that in the course of proceedings. Whether or not it's been waived, there's no precedent regarding whether that right can be waived. Although paragraph 21 does indicate that once a final order of removal is entered in a case, there are no further rights to deportation or exclusion proceedings. That's what paragraph 21 says. Further supporting the contention that the ABC settlement agreement contemplated that these requests would be made while proceedings are live and ongoing. Not belatedly, after the Board of Immigration Appeals denies an appeal as untimely, it goes up to the- It says that? Or are you just going by the language? I'm going plainly by the language of the settlement agreement. There are unfortunately very few BIA cases addressing the settlement agreement and very few Ninth Circuit cases which address the settlement agreement. In fact, very few courts have addressed the contours of the settlement and when requests for administrative closure can be made. The board decision which addresses it was a decision which addressed an interlocutory appeal, a request for administrative closure during the course of proceedings. So it didn't even involve a request made at a later stage. And so we don't have much authority in interpreting the- So your best argument is the plain language of paragraph 21? That's correct. That paragraph 19 and 21 when read in conjunction with one another indicate that the requests are to be made in the course of proceedings. And because Mr. Hernandez was filing an election with the board upon remand from this court and not a motion to reopen, this court's case law relating to the board's place of filing rule is simply an apposite because it addressed the board's jurisdiction to consider motions which are ruled by regulation and by statute. And this election is not ruled by regulation and statute. It's ruled by the settlement agreement itself which contemplates that those requests would be made earlier on in time. And Mr. Hernandez can proceed with his request for asylum and de novo adjudication by USCIS. As indicated, interviews have been scheduled on numerous occasions and been rescheduled by petitioner's counsel at his own request. And so the fact that he- So are both of these options absolutely equal to him or is one more advantageous to him? It would be advantageous to him, I suppose, to the extent that it would allow delay in his case if you wanted administrative closure. But we were also willing to hold the case in abeyance to allow him to proceed with his adjudication before USCIS and petitioner opposed that as well. The government did indicate a willingness to hold this Ninth Circuit case in abeyance to allow him to get USCIS to review his claim. Well, I'm just- I'm going to ask the other side. So what I'm asking you right now, is there an advantage to him if he gets administrative closure? There is one advantage that he believes that is in existence and the government disagrees on this point. The regulations provide that in the case of an alien who seeks administrative closure and receives it and has not yet had an adjudication by USCIS on their ABC asylum application, that they are eligible to seek NACARA relief from USCIS. So petitioner's position, and I'll allow him to correct me if I'm wrong, I hope I'm not misrepresenting here, forgive me if I do, is that if this case is administratively closed, because his asylum application has not yet been adjudicated de novo pursuant to the ABC settlement agreement, he would be eligible for a second NACARA adjudication by USCIS. Now the regulations, just like the settlement agreement, contemplate that these requests will not be made after a final order of removal has been entered. So your answer is even if he were granted administrative closure, you're going to hunt him down and make sure that he doesn't do what you're saying? It's merely to say that my conversations with USCIS have indicated that he's not eligible for a second adjudication of his NACARA application. The immigration judge already adjudicated it, and so the only purpose of administrative closure from the government's perspective would be then for him to have the closure to seek the de novo adjudication of his asylum application before USCIS, which he is still eligible to do now, notwithstanding the final order of removal and a denial of his petition for review. So in your view, if he did it, did the administrative closure, it wouldn't matter? It would not matter because— Why don't you do it? The request was made to the board. The board addressed that request as it did. And because the board's decisions within the confines of the settlement agreement didn't violate the settlement agreement, the government's position is that that decision should be upheld. But your other position is it doesn't matter if you give it to him. It's not going to have any effect. He is eligible for the same de novo adjudication. Does that mean yes? It means that the government attempted to indicate its willingness to hold the case in abeyance. Okay. I don't know why it's so hard to say yes. If it's not going to make any difference, I just want to know if it doesn't make any difference, I'd like to know why the government's wasting all of this time and money and why three of us are sitting here with something that doesn't matter. Your Honor, as an attorney for the government, I'm constrained by the decision of the board. I can't make a new decision for the board. So— Okay. Well, that's a good answer. Okay. That's the best answer I have for you. I'm sorry if that's unsatisfactory. But, Your Honors, I see I'm over time here, and so I don't want to abuse your hospitality. So if you have no further questions, we would submit on the brief and ask the court to dismiss in part and deny in part the petition for review. Thank you. Your Honors, I feel a little bit like I'm in Kafka's The Trial because I'm not sure I understand the government's argument, since none of that was in the brief, as far as I remember. My opposing counsel just said that he can't make a new decision for the board, but in fact that's what he's attempting to do here. He's attempting to give his reading of the ABC settlement agreement, his reading of what he considers to be the plain language of that contract, an ameliorative contract that should be construed in my client's favor, when the board didn't even talk about the ABC settlement agreement. The board said nothing about the fact that it could only consider a paragraph 19 election if an appeal is timely. It simply stated that it lacked jurisdiction, and that's why Hernandez is controlling here. My opposing counsel says, no, it's completely different. Hernandez had to do with a motion to reopen, and this case has to do with an election during the pendency of a direct appeal. But the point of Hernandez is that the board simply can't disclaim its jurisdiction in the same breath that it exercises its certification authority to go ahead and do that which it claims to be prohibited from doing. And if you look at the plain language of paragraph 19 of the ABC settlement agreement, it says nothing about when to request this before the immigration judge, when to request this before the board of immigration appeals. It just simply states that upon request, if the requirements are met, the person has not been convicted of an aggravated felony, then the proceedings will be administratively closed. What about paragraph 21? Paragraph 21 is being misread by the government. It's nowhere in its brief. What the point of that November 30th, 1990 date is all about is that if cases had already been completed, if they had already resulted in a final order of removal, then those individuals weren't going to get two bites of the apple. They were going to be able to avail themselves of the benefits of the ABC settlement agreement, and they were going to get their de novo adjudication by the immigration service. This speaks nothing about cases that are initiated after November 30th, 1990, whether or not once having an immigration judge order, forever being considered the same as a pre-November 30th, 1990 case. Well, so what, from your perspective, why is having an administrative closure as opposed to going directly to have the de novo asylum, what is the advantage to your client? Well, the advantage is the non-adversarial proceedings, first of all. If you've read the record, I was able to get the transcripts in. Originally, the certified record didn't even have the transcripts. You all saw how the immigration judge treated this individual. You all saw how the government attorney, in the same breath, stating that, oh, yes, we have his application for TPS, oh, yes, he's registered as an ABC class member, and yet telling the immigration judge, oh, he's failed to meet his burden of proof, where's the proof that he was here in 1990? His granted TPS application was granted on the basis of his California or Arizona driver's license in 1988, and yet, despite this court's decision in Dent, the service never helped this guy out by giving him access to his own file. But more importantly, if you look at the statistics for how many NACARA cases the asylum office grants, it's 90%, and if you dig, if you drill into that 90%, the 10% that aren't granted, it's because there was a mistake in accepting the application when there was a final order or there's some disqualifying criminal conviction. Before this immigration judge, my client, at that moment, was not going to be granted NACARA relief in the exercise of discretion, even if the judge hadn't also determined that he was statutorily ineligible. Now it's been over seven years, he hasn't reoffended. If he could get his proceedings administratively closed, he'd be able to file his NACARA application, and before his de novo asylum adjudication, first that NACARA application would be adjudicated. So that's the real prejudice here. Just like in Charlie Garcia, the real problem was the ineligibility for NACARA. Can the government stop that NACARA adjudication? I don't see... Well, at this point, the asylum office won't accept the application because there is a final order, which is under review, which is the direct appeal that the BIA refused to even consider. If the proceedings were administratively closed, then the regulation is clear in the opposite direction of what my opposing counsel just said, that because there hasn't been already requests to recalendar administratively closed proceedings, as this is the first time the proceedings have been closed, the asylum office has jurisdiction over that NACARA application. The agency has separate responsibilities, and there's nothing ICE could do to prevent USCIS from adjudicating that application. And again, I don't see what the harm is to the government. If he's again denied NACARA and the exercise of discretion by the asylum office, they'll proceed on the asylum application. If he's denied that asylum application, then DHS simply just recalendars the appeal. Oh, okay. So the advantage is you think that the NACARA application, there's more of them that are But that also gives you another bite before then you go over to the next, if you lose there. No. If we lose before the asylum office, end of story. The government recalendars the appeal. The BIA says, okay, we get it now. If you, if it's administratively closed, then you go the NACARA route. But if you lose there, then you can still go. No. That's the end of it? That's the end of it. It's been adjudicated already by EOIR. Okay. The asylum office says no NACARA, asylum denied. But NACARA grants more than the asylum office. Right. It's the role. It's a pretty short, it's a pretty short thing. It's like I used to work for the asylum office. I've had plenty of cases where an individual had a negative EOIR finding on a NACARA application. And once the proceedings were admin closed, the asylum office took it and they granted it. And rather than snatch defeat from the jaws of victory, unless this court has additional questions, I'll feed my time to the time the government went over. I have one question, Mr. Knapp, which is a general question, not based on the case, but I make it a practice of getting all biographical information on lawyers. And I see that you attended Westfield State University and also college in Westfield, Massachusetts. That's correct. My mother taught there, so I was able to go there for free. No student loan debt. Because I'm a migrant from Massachusetts myself. I can tell by your accent. When did you come to California? Excuse me? When did you come to California? Oh, I did what a lot of my clients did. I sneaked into California. I got a DMV ID card, I failed the driver's license test, but then, boom, I established my residency. And then in one year, I was able to get in-state tuition at the University of California. So I would say it was 1988. Very good. Thank you.  Thank you both for your argument in this case. Thank you, Your Honor. And we appreciate your pro bono work.
judges: Reinhardt, Noonan, Callahan